UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JEFFREY P., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 2:18-cv-00124-DBH |
| | ) | |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION

On Plaintiff Jeffery P.'s application for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

### The Administrative Findings

The Commissioner's final decision is the April 28, 2017, decision of the Administrative Law Judge. (ALJ Decision, ECF No. 9-2).[1] The ALJ's decision tracks the

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of osteoarthritis of the left hip and degenerative joint disease of the right ankle. (ALJ Decision ¶¶ 3, 4.) The impairments, according to the ALJ, do not deprive Plaintiff of the residual functional capacity (RFC) to perform a subset of sedentary work. (*Id.* ¶ 5.) At the hearing, a vocational expert testified that a person with Plaintiff's RFC and vocational background could transition to work existing in substantial numbers in the national economy; the expert identified the specific jobs of order clerk and pari-mutuel ticket checker. (Hr'g Tr., ECF No. 9-2, R. 167 – 69, 171 – 72.) After considering the evidence, the ALJ found Plaintiff not disabled for purposes of the Social Security Act, from November 1, 2011, through the date of his decision. (ALJ Decision ¶¶ 10 – 11.)

**Standard of Review**

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive

when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## Discussion

Plaintiff alleges the ALJ erred at step 2 when he found Plaintiff's mental health issues were not severe for vocational purposes. (Statement of Errors at 6-8.) Plaintiff also argues the ALJ erred in his assessment of Plaintiff's RFC in that the ALJ's finding that Plaintiff must alternate between sitting and standing every 60 minutes is inconsistent with a limitation to sedentary work. (*Id.* at 12-14.) In support of his arguments, Plaintiff contends the ALJ judged matters entrusted to experts and failed to weigh properly the opinion evidence offered by certain experts. (*Id.* at 4-12.)

### A. Plaintiff's mental health issues

The ALJ acknowledged Plaintiff's depression diagnosis, but the ALJ found the condition does not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities. (R. 12.) The ALJ found Plaintiff experiences only mild or no limitation in each of the four areas of mental functioning in Defendant's recently amended regulations, 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1), i.e., (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.

The ALJ reasoned that Plaintiff did not assert in the claim documents, prehearing brief, or hearing testimony that he was disabled based in part on a mental impairment. Additionally, the ALJ found that Plaintiff had not received any mental health treatment

3

after the alleged onset date, and that treating sources had not documented any complaints or observations of ongoing psychological issues. (R. 13.)

According to Plaintiff, the ALJ erred when he failed to give weight to the July 2014 findings and report of Joseph Wojcik, Ph.D. (Ex. 2F, ECF No. 9-7.) Plaintiff maintains that the current application follows an earlier application that the ALJ constructively reopened in which Plaintiff asserted a mental impairment. (Statement of Errors at 6.) As part of the earlier proceeding, Dr. Wojcik performed a consultative examination of Plaintiff and assessed that Plaintiff's report of a prior diagnosis of attention deficit hyperactivity disorder (ADHD)[2] was consistent with fidgety behavior he displayed during the consultative exam. Dr. Wojcik found no evidence of mood disorder and opined that Plaintiff "may have difficulty with sustained effort and working independently." (R. 516.) The consultative reviewing expert involved in the review of the prior application, Mary Burkhart, Ph.D., considered Dr. Wojcik's statement, assessed a severe organic mental disorder, but determined the condition would not preclude Plaintiff from performing simple tasks and adapting to simple changes. (Ex. 2A, R. 190, 193 (finding moderate limitation in concentration, persistence, and pace).)

In the proceedings on the current application, in March 2016, Annette De Paz-Ortiz, Psy.D., reviewed Dr. Wojcik's statement and more current records. She concluded that Plaintiff's mental condition is most appropriately characterized as a non-severe affective disorder. (Ex. 11A, R. 244, 247 – 49.) Finally, during Plaintiff's November 2016

---

[2] In August 2014, a provider issued to Plaintiff a prescription of Adderall for management of ADHD. (Ex. 7F, R. 593.)

4

consultation with Leonid Tempkin, M.D., for pain management, Dr. Tempkin noted that Plaintiff "seems to be emotionally unstable" and referred Plaintiff for cognitive behavioral therapy. (Ex. 11F, R. 642.)

Plaintiff argues that the ALJ could not, as a matter of law, rely on Plaintiff's failure to assert a mental limitation in his current application, evidently because the ALJ constructively reopened his prior application in which Plaintiff had asserted a mental limitation. Plaintiff contends the record requires a finding of moderate limitation in concentration, persistence, and pace, and a restriction to simple changes. (Statement of Errors at 7 – 8.) According to Plaintiff, the limitation and restriction would eliminate the jobs on which the ALJ relied at step 5. (*Id.* at 8.) Plaintiff further argues the ALJ necessarily erred, because although the ALJ applied Defendant's amended standards for assessing mental impairment, the mental health experts in the record did not, and therefore the ALJ judged matters that should have been considered first by the experts. (*Id.* at 9 – 12.)

Petitioner's arguments are unpersuasive. In this action, Petitioner did not assert before the ALJ a disability due to mental health concerns, and the record contains no evidence of treatment that would suggest an ongoing disabling condition. Given the lack of a claim and any supporting evidence, the ALJ could reasonably conclude, without the benefit of an expert, that Plaintiff does not suffer from a severe mental health condition. Even had Plaintiff established error, particularly given the record evidence that Plaintiff could perform simple tasks, which the vocational expert addressed, the record lacks any evidence to establish that such a finding would have produced a different result and,

5

therefore, any error would be harmless. *Bolduc v. Astrue*, No. 1:09-cv-220, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010) (collecting cases)).

B. **Plaintiff's ability to perform sedentary work**

Citing medical opinions in the record on the prior application, Plaintiff argues the ALJ erred in his assessment of Plaintiff's physical RFC because he neglected to discuss the September 2014 opinions of Robert Hayes, D.O. (Ex. 2A) and the September 2015 opinions of Archibald Green, D.O. (Ex. 5A). (Statement of Errors at 5-6.) The opinions, however, do not require a finding of a more restrictive RFC.

Plaintiff argues the ALJ erred by including a vague sit/stand option, and by failing to explore more extensively the potential for conflict between the vocational expert's testimony and the information provided in the Dictionary of Occupational Titles. (Statement of Errors at 12 – 14.) According to Plaintiff, the ALJ's finding that Plaintiff "must be allowed the discretion to alternate between sitting and standing every 60 minutes" appears to require that he sit for an hour and then stand for an hour. (*Id.* at 12.) Alternatively, Plaintiff argues the ALJ was required to specify the duration for which Plaintiff would adjust his position. (*Id.* at 13, citing Social Security Ruling 83-12, at *4: "[M]ost jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.").

Plaintiff's concern about any possible conflict between the vocational expert's testimony that the identified jobs would accommodate a sit/stand option and the definitions

6

provided for the jobs in the Dictionary of Occupational Titles would not warrant a remand. Because the Dictionary of Occupational Titles does not address whether jobs are compatible with a sit/stand option, there was no conflict for the vocational expert to address. *Wasilauskis v. Astrue*, No. 1:08-cv-284, 2009 WL 861492, at *5 n.8 (D. Me. Mar. 30, 2009), *report and recommendation adopted*, 2009 WL 1078362 (Apr. 21, 2009).

The issue is whether the assessed need to alternate positions hourly was so vague that one should assume the vocational expert understood that Plaintiff would be expected to alternate between sitting for an hour and then standing for an hour. In a sedentary job, the worker is predominantly sitting throughout the workday, with occasional need to stand and/or walk. 20 C.F.R. §§ 404.1567(a), 416.967(a). Contrary to Plaintiff's argument, the record, including the ALJ's questioning of the vocational expert, reflects that the ALJ intended for Plaintiff to be able to stand and move about briefly every hour to adjust position to address any discomfort from sitting, not to stand/walk for as many as four hours per work day. The vocational expert's observation that periodic adjustment was for the purpose of changing posture, not for the purpose of stopping work, demonstrates the expert understood the ALJ's concern. (Hr'g Tr. at 36, R. 172.) While the vocational expert acknowledged that some employers might not approve of changes at hourly intervals, the expert identified a substantial number of jobs - 100,000 order clerk jobs and 10,000 pari-mutuel ticket checkers – to support the ALJ's determination. Accordingly, the ALJ's assessment of Plaintiff's RFC and the available jobs is supported by the record.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 29th day of January, 2019.